*NOT FOR PUBLICATION*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____ :
                                  :
RICHARD ANNUNZIATA,               :
                                  :
                    Plaintiff,    :           Civil Action No. 16-6662(FLW)
                                  :
v.                                :
                                  :           **OPINION**
                                  :
NEW JERSEY RACING COMMISSION      :
and RICHARD O'DONNELL,            :
                                  :
                    Defendants.   :
                                  :
_____ :

**WOLFSON, United States District Judge**:

      Previously, the Court dismissed Plaintiff Richard Annunziata's ("Plaintiff" or "Annunziata") Complaint for lack of Article III standing; however, in lieu of dismissal, Plaintiff was provided an opportunity to cure the deficiencies. *See* Opinion and Order dated October 3, 2017 (the "October Opinion"). Plaintiff, subsequently, filed an Amended Complaint. Presently before the Court is a motion to dismiss the Amended Complaint filed by Defendants New Jersey Racing Commission and Richard O'Donnell, the State Steward, (collectively, "Defendants"), pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Plaintiff, represented by counsel, has not opposed the motion. For the reasons set forth below, because Plaintiff's amendments regarding standing fare no better than the original pleading, Defendants' motion to dismiss **GRANTED**.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

      On a motion to dismiss, the Court reviews the Complaint by taking its allegations as true. The facts of this case were outlined in detail in the October Opinion, and thus, they will not be

recounted in full here. The NJRC, a state agency in the Department of Law & Public Safety, is responsible for regulating the horse racing industry in the state of New Jersey. Am. Compl., ¶ 22. As the state's regulator of the horse racing industry, one of NJRC's duties is to review individual license applications. As the Amended Complaint expressly acknowledges, "[o]nly the NJRC has the statutory and regulatory authority to issue or refuse to issue a license, or suspend or revoke a license in connection with horse racing." *Id.* at ¶ 24.

On September 15, 2016, Annunziata applied to the NJRC for a license as a stable worker; more specifically, Plaintiff applied for a 2016 Thoroughbred Grooms license. *Id.* at ¶ 29. Annunziata's application was "flagged" by O'Donnell. *Id.* On September 22, 2016, Annunziata received a letter from O'Donnell stating that Plaintiff's application for a 2016 NJRC Thoroughbred Grooms license had been reviewed by O'Donnell, and that O'Donnell had not *recommended* Annunziata for a NJRC license due to Annunziata's alleged continuing involvement with racing without a current NJRC license. *Id.* at ¶ 33. Plaintiff avers that O'Donnell's decision was based on biased and capricious criteria. *Id.* at ¶ 34.

Based on O'Donnell's letter, Plaintiff filed his initial complaint on October 6, 2016. In his original complaint, Plaintiff brought three causes of action against Defendants: 1) violation of 42 U.S.C. § 1983; 2) declaratory relief pursuant to 28 U.S.C. § 2201; and 3) temporary restraints. Defendants responded with a motion to dismiss on March 20, 2017, seeking to dismiss the entirety of the case based on, *inter alia*, standing and failure to exhaust administrative remedies. Plaintiff opposed that motion. Thereafter, the Court issued the October Opinion, wherein the Court held that Plaintiff lacked Article III standing because there was no final agency action taken on the part of NJRC. I explained that O'Donnell's decision not to recommend Plaintiff does not constitute a final agency decision. And, absent that decision on Plaintiff's license application, I found that no

cognizable injury-in-fact had been pled. Nevertheless, I expressed my concern "that the appeal-related language in O'Donnell's letter added some confusion to the status of Plaintiff's stable license." *See* October Opinion, p. 8. Accordingly, I provided Plaintiff an opportunity to amend his complaint to more clearly and thoroughly establish standing.

Plaintiff filed an Amended Complaint on October 18, 2017. As to standing, Plaintiff does not aver that O'Donnell's letter constitutes a final agency decision; rather, Plaintiff alleges that he had established standing because "defendants have exhibited [] hostility to plaintiff." Am. Compl., ¶ 5. Plaintiff explains that O'Donnell's decision not to recommend Plaintiff for licensure is based on his hostility towards Plaintiff. In that respect, Plaintiff alleges that "any animus directed towards plaintiff by defendant and by any other individual in the administrative chain of commend . . . will be even greater . . . ." *Id.* at ¶ 8.

Presently, Defendants move to dismiss the Amended Complaint. Plaintiff, represented by counsel, has not opposed Defendants' dismissal motion.[1]

## DISCUSSION

I. **Standard of Review**

A. *Rule 12(b)(1) Standard*

Under Fed. R. Civ. P. 12(b)(1), a court must grant a motion to dismiss if said court lacks subject matter jurisdiction to hear a claim. *Prof'l Orthopedic Assocs., PA v. Excellus Blue Cross Blue Shield*, 2015 U.S. Dist. LEXIS 91815, *9 (D.N.J. July 15, 2015) (citing Fed. R. Civ. P.

---

[1] Defendants' motion to dismiss was filed on January 3, 2018. Plaintiff has failed to file any opposition to the motion. In that regard, the Court contacted Plaintiff's counsel by phone on one occasion to inquiry about the status of Plaintiff's opposition brief. The Court advised counsel that Defendants' dispositive motion would be considered unopposed if Plaintiff did not respond. While counsel represented that he would seek permission to file the opposition out of time, no request was ever submitted. Defendants' motion is, therefore, considered unopposed.

12(b)(1)). "A motion to dismiss for want of standing is also properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *Ballentine v. United States*, 486 F.3d 806, 810, 48 V.I. 1059 (3d Cir. 2007) (citing *St. Thomas-St. John Hotel & Tourism Ass'n v. Gov't of the U.S. Virgin Islands*, 218 F.3d 232, 240 (3d Cir. 2000) ("The issue of standing is jurisdictional.")). The plaintiff must establish standing, "and 'each element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation.'" *Id.* (quoting *FOCUS v. Allegheny Cnty. Court of Common Pleas*, 75 F.3d 834, 838 (3d Cir. 1996)).

When considering a Rule 12(b)(1) motion to dismiss, a court must determine whether the motion is taking aim at a complaint's alleged deficiency on its face, or whether the motion attacks a lack of subject matter jurisdiction in fact, apart from any pleadings. The answer to this question determines how the pleadings are reviewed. *See Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977); *see also Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (discussing facial attacks); *Constitution Party v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014) (citing *Mortensen*, 549 F.2d at 891) ("A factual attack, on the other hand, is an argument that there is no subject matter because the facts of the case—and here, the District Court may look beyond the pleadings to ascertain the facts—do not support the asserted jurisdiction."). In short, "a facial attack 'contests the sufficiency of the pleadings, whereas a factual attack concerns the actual failure of a [plaintiff's] claims to comport [factually] with the jurisdictional prerequisites.'" *Constitution Party*, 757 F.3d at 358 (quoting *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008)) (internal quotation marks omitted) (alterations in original). However, the "facial-factual" question is not the end of the standing analysis. "It is axiomatic that, in addition to those

requirements imposed by statute, plaintiffs must also satisfy Article III of the Constitution." *Horvath v. Keystone Health Plan East, Inc.*, 333 F.3d 450, 455 (3d Cir. 2003) (citation omitted).

B.    *Standing*

Article III of the Constitution limits the jurisdiction of federal courts to "cases" and "controversies." *Lance v. Coffman*, 549 U.S. 437, 439 (2007). Standing itself is "a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Furthermore, "[t]he standing inquiry . . . focuse[s] on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed." *Constitution Party*, 757 F.3d 347, 360 (3d Cir. 2014) (quoting *Davis v. FEC*, 554 U.S. 724, 734 (2008)) (alterations original). To demonstrate standing, a plaintiff must establish: "(1) an injury-in-fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 272 (3d Cir. 2016) (quoting *Finkelman v. Nat'l Football League*, 810 F.3d 187, 193 (3d Cir. 2016)) (internal quotations and citations omitted). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Spokeo*, 136 S. Ct. at 1547 (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990)).

To allege injury-in-fact, "a plaintiff must claim the invasion of a concrete and particularized legally protected interest resulting in harm that is actual or imminent, not conjectural or hypothetical." *Nickelodeon*, 827 F.3d at 272 (quoting *Finkelman*, 810 F.3d at 193) (internal quotations omitted). A harm is "concrete" only "if it is 'de facto'; that is, it must actually exist"— it cannot be merely "abstract." *Id.* (quoting *Spokeo*, 136 S. Ct. at 1548).

In the present matter, Defendants again move to dismiss Plaintiff's Amended Complaint on the basis, *inter alia*, that Plaintiff lacks Article III standing. As discussed above, a justiciable

controversy must be definite and concrete, "admitting of specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Wyatt v. Gov't of the Virgin Islands*, 385 F.3d, 801, 802 (3d Cir. 2004). The genesis of Plaintiff's Amended Complaint is that O'Donnell *denied* his license application based on biased and capricious criteria, and that O'Donnell's hostility towards Plaintiff would prevent Plaintiff from receiving a fair hearing on his license application. Am. Compl., ¶¶ 5, 9, 33. However, like the original complaint, Plaintiff's Amended Complaint makes clear that O'Donnell's letter only indicated that O'Donnell would not *recommend* Plaintiff for a NJRC license due to his alleged continuing involvement with racing without a current NJRC license; the letter does not explicitly state that Annunziata's application is denied, or even that it had been reviewed by the NJRC. *See* Am. Compl., at ¶ 33; *see also* N.J.A.C. 13:70-4.8.

In my October Opinion, I explained that in New Jersey, the NJRC, alone, has the full power and authority to "prescribe rules, regulations and conditions under which all such licenses are issued in the State of New Jersey and to revoke or refuse to issue a license if in the opinion of the commission the revocation or refusal to issue such license is in the public interest . . . ." N.J.S.A. 5:5-33; *see also* N.J.A.C. 13:70-4.9, 13:70-13A.2; *Dare v. State*, 159 N.J. Super. 533, 536-37 (App.Div.1978); *Delguidice v. New Jersey Racing Com.*, 100 N.J. 79, 90 (1985) (stating that the legislature gave the NJRC "full regulatory power over horse racing in this state.") (citing *State v. Dolce*, 178 N.J. Super. 275, 285 (App. Div. 1981)). Indeed, in that regard, the NJRC is authorized by statute to require licensure for certain positions related to the horse racing industry, and can review, affirm, or deny applications for such licensure. *See* N.J.A.C. 13:70-4.1, 13:70-4.6, 13:70-4.9; *see also* N.J.S.A. § 5:5-33 (imposing an obligation on the NJRC "to revoke or refuse to issue a license if in the opinion of the Commission the revocation or refusal to issue such license is in

the public interest."). An applicant for a license from the NJRC is responsible for proving his or her qualifications for licensure to the Board of Examiners. N.J.A.C. 13:70-4.8.

Within the NJRC, it is "[a] board of examiners composed of the State Steward and two associate stewards [that] shall examine" licenses for stable employees. N.J.A.C. 13:70-4.6. The Board of Examiners, of which the Steward is but one member, takes into consideration the recommendations of the State Steward, but only the Board of Examiners as a whole — not the State Steward (i.e. O'Donnell) alone — can issue a decision approving or denying license applications. *See* N.J.A.C. 13:70-4.6, 13:70-16.6 ("All questions pertaining to which their authority extends shall be determined by the majority vote of the stewards."); *see also* N.J.A.C. 13:70-4.8, 13:71-1.19; *McPeek v. Deputy AG of N.J.*, 2008 N.J. Super. Unpub. LEXIS 2782, *3 (App. Div. Dec. 22, 2008) (referring to the Board of Examiners as the "Board of Stewards"); *Costanzo v. New Jersey Racing Com.*, 126 N.J. Super. 187, 189 (App. Div. 1974) (referring to the affirmation by the NJRC of a Board of Stewards decision as the "Final Administrative action").

Here, both in his initial Complaint and Amended Complaint, Plaintiff has only alleged that O'Donnell would not *recommend* him for a NJRC license. Compl., ¶27; Am. Compl., at ¶ 33. While Plaintiff adds in his Amended Complaint that O'Donnell was hostile towards Plaintiff, those allegations do not cure standing. Plaintiff does not aver that the Board of Examiners, the appropriate authoritative body, has denied him a license, that they have reported their findings to the Commission, or that the NJRC itself has denied his application for licensure. *See* N.J.A.C. 13:70-4.9, 13:70-16.29, 13:70-16.30. More importantly, Plaintiff has failed to explain in his Amended Complaint how O'Donnell's letter constitutes the final agency decision on his licensure application. Simply, Plaintiff has not alleged that Board of Examiners took any action with respect

to his application.  Without more, the facts in the Amended Complaint are insufficient to cure the deficiencies of Plaintiff's initial complaint.

In sum, Plaintiff's has not established standing because he has not shown that there was final agency action. The "case or controversy" threshold of Article III requires that Plaintiff has standing to bring his § 1983-related claims.  Because his stable license application appears to be pending and has not been formally denied by the NJRC, Annunziata has not suffered an injury-in-fact sufficient to meet the standing requirements.  Rather, the alleged injuries that Annunziata seeks to redress are merely hypothetical, not yet concrete and particularized.  Accordingly, Plaintiff's claims are dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED**.  Plaintiff's claims are dismissed without prejudice.


Dated:  July 6, 2018                                                    /s/ Freda L. Wolfson
                                                                        Freda L. Wolfson
                                                                        United States District Judge